UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| MARIO D. JONES, ) | |
| ) | |
| *Plaintiff,* ) | |
| v. ) | No. 1:09-cv-171 |
| ) | Edgar / Carter |
| STATE OF TENNESSEE; BRADLEY ) | |
| COUNTY; BRADLEY COUNTY ) | |
| POLICE DEPARTMENT; BRADLEY ) | |
| COUNTY 10TH DISTRICT DRUG TASK ) | |
| FORCE; LIEUTENANT BOBBY ) | |
| QUEEN; OFFICER FRED SULLIVAN; ) | |
| and OFFICER KEN WILSON, ) | |
| ) | |
| *Defendants.* ) | |

**MEMORANDUM**

Plaintiff Mario Jones, representing himself pro se, brings this action against Defendants Bradley County, the Bradley County Police Department (collectively "County Defendants"), the State of Tennessee, the Bradley County 10th Judicial District Drug Task Force ("10th JDTF"), Bobby Queen, Fred Sullivan, and Ken Wilson (collectively "Defendants") alleging claims relating to alleged unconstitutional actions arising pursuant to 42 U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1985 ("Section 1985").[1]  These claims relate to an alleged unlawful arrest on state court criminal drug charges and the resulting alleged unlawful imprisonment.

Bradley County and the Bradley County Sheriff's Office, incorrectly identified as the Bradley County Police Department, filed a motion to dismiss Plaintiff's claims. [Court Doc. No.

---

[1] Plaintiff failed properly to serve his complaint on Bobby Queen or Ken Wilson in their individual capacities or Fred Sullivan in his individual or official capacities.  *See* [Court Doc. Nos. 29, 29-1].  This court will therefore dismiss Plaintiff's claims against these defendants without prejudice.  Fed. R. Civ. P. 4(m).

2]. Because the County Defendants filed affidavits in support of their motion to dismiss, this court will treat this motion as one for summary judgment pursuant to Fed. R. Civ. P. 56. *See* [Court Doc. No. 14]. These Defendants have also filed additional evidence in support of their motion. *See* [Court Doc. No. 22-1 through 22-22]. Defendants State of Tennessee, 10th JDTF, Bobby Queen, and Ken Wilson in their official capacities also filed a motion to dismiss Plaintiff's claims. [Court Doc. No. 27]. Plaintiff opposed the County Defendants' motion, but has failed to respond to the motion to dismiss filed by the other Defendants. *See* [Court Doc. No. 9]. These motions are now ripe.

After reviewing the complaint, the briefing filed by the parties, and the relevant law, the court has concluded that Plaintiff's claims against Defendants Bradley County, Bradley County Sheriff's Office, the State of Tennessee, the 10th JDTF, Bobby Queen, in his official capacity, and Ken Wilson, in his official capacity, will be **DISMISSED** in their entirety with prejudice. The motions filed by the Defendants will be **GRANTED**. Defendants Bobby Queen, in his individual capacity, Ken Wilson, in his individual capacity, and Fred Sullivan, in his official and individual capacities, have not been served with the Plaintiff's complaint. The court will therefore **DISMISS** the claims against these Defendants without prejudice.

    **I.**    **Background**

Plaintiff's claims are somewhat incoherent, and thus, the precise background facts in this case are elusive. However, the Defendants have provided several documents relating to state criminal court proceedings against Plaintiff that help to detail Plaintiff's path through the state criminal court system. [Court Doc. Nos. 22-1 through 22-22].

Plaintiff's complaint alleges the following background facts in his own words:

> On or about June 27th, 2002, Defendant, Lt Bobby Queen, acting in his official capacity as law officer for the State of Tennessee and a member of the 10th District Drug Task Force, along with an military police officer wrongfully and without probable cause pulled over the Plaintiff, detained the Plaintiff, obtained unlawful consent and falsely arrested the Plaintiff based on an alleged observation of Plaintiff driving on Interstate 75 and not being two or more car lengths behind the vehicle in front on [sic] Plaintiff's car. It was then alleged that 6,702 pills of a controlled substance was found in the rental car. These pills were later stored in the Evidence Locker Room at the 10th District Task Force location in Bradley county under the supervision of Officer Ken Wilson. Prior to this evidence being stored at this location, during its storage and after its storage, Officer Ken Wilson was tampering with and stealing evidence out of this Evidence Locker Room. The alleged pills were taken to the Chattanooga Crime laboratory on or about August 30, 2002 by Ken Wilson, after having been in the sole custody of Officer Ken Wilson for over thirty days. Officer Ken Wilson after tampering with this evidence took now 6,994 pills to the Drug lab for testing. Ken Wilson was convicted for tampering with and stealing evidence from this Evidence Locker Room.
>
> The Plaintiff has had three lawyers back out of his case and scared to present these facts. The Plaintiff is currently incarceration [sic] in the State of Mississippi based on a wrongful hold by the state of Tennessee.

[Court Doc. No. 1, Complaint]. Plaintiff requests removal from prison, dismissal of his Tennessee criminal court case, return of seized funds, discipline of attorneys, as well as damages in the amount of $10,000,000.

In their motion to dismiss, Bradley County and the Bradley County Sheriff's Office, provide affidavits indicating that the incidents Plaintiff alleges did not involve any employees or agents of either of the County Defendants. [Court Doc. No. 2-1, Affidavit of D. Gary Davis ("Davis Aff."), ¶¶ 4-6; Affidavit of Rena' Samples ("Samples Aff."), ¶¶ 4-5].

The County Defendants have further provided this court with other documents pertaining to the State of Tennessee's criminal charges against Plaintiff. The indictment filed on September 3, 2003 in the Criminal Court for Bradley County, Tennessee states that:

> On or about the 27th day of June, 2002, in Bradley County, Tennessee, and before the finding of this indictment, did unlawfully and knowingly possess with intent to sell or deliver a Schedule II controlled substance, to-wit: Hydromorphone – greater than 50 grams, as classified in Section 39-17-408 of the Tennessee Code Annotated, in violation of T.C.A. 39-17-417, all of which is against the peace and dignity of the State of Tennessee.

[Court Doc. No. 22-2, Indictment]. On November 15, 2004 a Bradley County Criminal Court Judge revoked Plaintiff's bond noting that Plaintiff "was arrested on new charges in New York and has failed to appear in this Court . . . ." [Court Doc. No. 22-4]. On November 30, 2004 the State of Tennessee issued a Capias for Plaintiff due to his failure to appear in criminal court on November 15, 2004. On January 21, 2005 a federal magistrate judge dismissed the complaint against Plaintiff without prejudice in federal district court in New York. [Court Doc. No. 22-6].

On March 22, 2005 the Plaintiff's attorneys moved in Tennessee criminal court to reinstate Plaintiff's bond. [Court Doc. No. 22-8]. Plaintiff moved to suppress the search of his vehicle and to suppress evidence of narcotics seized from him due to alleged defects in the chain of custody. The court denied the motions to suppress. [Court Doc. Nos. 22-9, 22-18, 22-19].

On May 12, 2006 Plaintiff obtained new defense counsel in his criminal case, and she twice moved for a continuance of the trial. [Court Doc. Nos. 22-12, 22-13]. When Plaintiff failed to appear for trial on July 19, 2006, the State of Tennessee moved to revoke his bond once again. [Court Doc. No. 22-14]. On November 6, 2006 the state criminal court judge ordered the Plaintiff to undergo a mental evaluation. The mental health evaluator determined that Plaintiff was competent to stand trial. [Court Doc. No. 22-15]. On July 2, 2007 Plaintiff's counsel moved to withdraw as defense counsel because Plaintiff would not contact her. [Court Doc. No. 22-20]. On July 3, 2007 the state issued another capias due to Plaintiff's failure to appear in court. [Court Doc. No. 22-21]. On June 26, 2009 the State of Tennessee extradited Plaintiff

from prison in Mississippi so that he could stand trial on the pending drug charges in Tennessee. [Court Doc. No. 22-22]. On December 8, 2009 a state court jury found Plaintiff guilty of possession of Schedule II Hydromorphone with intent to sell or deliver over 50 grams. [Court Doc. No. 32-1].

## II.     Standards of Review

### A.     Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court "must read all well-pleaded allegations of the complaint as true." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Bower v. Federal Express Corp.*, 96 F.3d 200, 203 (6th Cir. 1996)). In addition, a court must construe all allegations in the light most favorable to the plaintiff. *Bower*, 96 F.3d at 203 (citing *Sinay v. Lamson & Sessions*, 948 F.2d 1037, 1039 (6th Cir. 1991)).

The Supreme Court has explained "an accepted pleading standard" that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007). The complaint "must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory." *Weiner*, 108 F.3d at 88 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993)). In *Twombly* the Supreme Court emphasized that:

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his

"entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do, . . . Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. at 555, 127 S.Ct. at 1964-65 (citations omitted).

The Supreme Court has recently clarified that *Twombly* is not limited "to pleadings made in the context of an antitrust dispute." *Ashcroft v. Iqbal*, __ U.S. ___, 129 S.Ct. 1937 (2009). The Court emphasized that "though *Twombly* determined the sufficiency of a complaint sounding in antitrust, the decision was based on our interpretation and application of Rule 8. That Rule in turn governs the pleading standard 'in all civil actions,' and it applies to antitrust and discrimination suits alike." ___ U.S. at ___, 129 S.Ct. at 1953 (quoting *Twombly*, 550 U.S. at 555-556, 127 S.Ct. 1955). The Court in *Iqbal* indicated the Rule 8 pleading standards that apply to all cases:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, ___ U.S. at ___, 129 S.Ct. at 1949-50.

### B. Motion for Summary Judgment

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the

Court must view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36.

**III.    Analysis**

### A. Eleventh Amendment Immunity

The State of Tennessee, the 10th JDTF, Bobby Queen, in his official capacity, and Ken Wilson, in his official capacity, move to dismiss Plaintiff's claims against them. The State claims that Plaintiff has not properly served Defendants Wilson, Queen, and Fred Sullivan; therefore the court does not address the merits of the claims against Defendants Wilson and Queen in their individual capacities or against Defendant Sullivan in his individual or official capacities. *See* [Court Doc. Nos. 29, 29-1].

The State argues that it is immune from Plaintiff's claims pursuant to the Eleventh Amendment of the United States Constitution. It further argues that its agencies and its employees in their official capacities are immune from money damages under the Eleventh Amendment. The Eleventh Amendment provides:

> 'The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.'

U.S. Const. amend. XI. *See Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347 (1974). As the Supreme Court noted in *Edelman*, "[w]hile the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." 415 U.S. at 663, 94 S.Ct. 1347. There are exceptions to a State's sovereign immunity. First, Congress may abrogate a State's immunity by exercising its enforcement authority pursuant to the Fourteenth Amendment. *See Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005). Second, "[a] sovereign's immunity may be waived, and the Court consistently has held that a State may consent to suit against it in federal court." *Pennhurst State Sch. & Hosp. v.*

*Halderman*, 465 U.S. 89, 99, 104 S.Ct. 900 (1984), *overruled in part on other grounds by Will v. Michigan Dep't of State Police*, 491 U.S. 58 (1989). The State's consent to suit must be "unequivocally expressed," however. *Id.* Eleventh Amendment immunity also does not attach to counties and other municipal coporations. *Ernst*, 427 F.3d at 358 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568 (1977)).

Further, "The Eleventh Amendment bars a suit against state officials when 'the state is the real, substantial party in interest.' Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.' *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101 (quotations omitted). Tennessee has not consented to suit, and it has also not waived sovereign immunity in cases involving Section 1983 and Section 1985. *See Perez v. Wade*, 652 F.Supp.2d 901 (W.D. Tenn. 2009); *Feritto v. Ohio Dep't of Highway Safety*, No. 90-3475, 1991 WL 37824, *2 (6th Cir. Mar. 19, 1991); *Mason v. Stacey*, No: 4:07-cv-43, 2009 WL 803107, *8 (E.D. Tenn. Mar. 25, 2009). The Eleventh Amendment thus provides immunity to the State of Tennessee from Plaintiff's Section 1983 and Section 1985 claims. Plaintiff's claims against the State will therefore be **DISMISSED** in their entirety with prejudice.

In addition, a state is not a person for purposes of Section 1983, nor is a state official acting in his or her official capacity. *See Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304 (1989). The 10th JDTF is a state entity, and a "judicial district drug task force [is] 'not a 'person' amenable to suit under § 1983.'" *Perez*, 652 F.Supp.2d at 904 (quoting *Timberlake by Timberlake v. Benton*, 786 F.Supp. 676, 683 (M.D. Tenn. 1992)). As the district court in *Perez* noted "any money judgment against the Drug Task Force would be, in essence, a

judgment against the state, allowing the state to invoke sovereign immunity." *Perez*, 652 F.Supp.2d at 905. Therefore, the claims against the 10th JDTF must also be **DISMISSED** with prejudice.

In *Ex parte Young* the U.S. Supreme Court held that a state official is not immune from prospective injunctive relief enjoining him from violating federal law. 209 U.S. 123, 155-56, 28 S.Ct. 441 (1908); *see also*, *Ernst*, 427 F.3d at 358-59. The State and its agencies, however, are immune from injunctive relief by Plaintiff, as the *Ex parte Young* exception applies only to individual defendants. *Ernst*, 427 F.3d at 358.

As a district court in this Circuit has noted,

> "In determining whether the doctrine of *Ex Parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." "The focus of the inquiry remains on the allegations only; it 'does not include an analysis of the merits of the claim.'" Complaints "based entirely upon past acts and not continuing conduct, that, if stopped, would provide a remedy to [the plaintiff]" do not implicate the doctrine.

*Perez*, 652 F.Supp.2d at 906 (quoting *Verizon Md., Inc. v. Public Serv. Comm'n of Md.*, 535 U.S. 635, 645, 122 S.Ct. 1753, 1760 (2002); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 474 (6th Cir. 2008); *Gean v. Hattaway*, 330 F.3d 758, 776 (6th Cir. 2003)). In this case the Plaintiff seeks relief for alleged past violations of his civil rights; however, he also seeks release from prison as injunctive relief. His claims against the state employees in their official capacities for injunctive relief are therefore not barred under the *Ex parte Young* doctrine.

### B. *Heck v. Humphrey* Doctrine

Although the *Ex parte Young* doctrine exempts claims for prospective injunctive relief

against States' employees from Eleventh Amendment immunity, the doctrine of *Heck v. Humphrey* applies to bar Plaintiff's claims against all the Defendants. In *Heck v. Humphrey* the Supreme Court held:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983. Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.

512 U.S. 477, 486-87, 114 S.Ct. 2354, 2372 (1994). Claims for damages, declaratory and injunctive relief are barred under this analysis. *See Jones v. Goldman*, No. 1:10-cv-196, 2010 WL 1132438, *3 (W.D. Mich. Mar. 23, 2010); *Jones v. Parker*, No. 10-10054, 2010 WL 419996, *1 (E.D. Mich. Feb. 1, 2010); *Parr v. Makel*, No. 99-2324, 229 F.3d 1153, *1 (6th Cir. 2000) (relying on *Preiser v. Rodriguez*, 411 U.S. 475, 488-90 (1973)). The *Heck* analysis also applies to claims pursuant to Section 1985. *Mason*, 2009 WL 803107 at *7; *see also, Lanier v. Bryant*, 332 F.3d 999, 1005-06 (6th Cir. 2003).

Plaintiff is directly challenging the individual Defendants' actions as they affected his state court criminal case. Plaintiff has been convicted of the possession of drug charges that the State of Tennessee brought against him. *See* [Court Doc. No. 32-1]. He seeks both damages and release from prison. If this court were to grant Plaintiff's claims it would necessarily imply the invalidity of his criminal conviction. This is what the *Heck* doctrine forbids. For this reason,

Plaintiff's claims against the Defendants who were properly served must be **DISMISSED**.

### C. Lack of Involvement in Allegations of Complaint

Bradley County and the Bradley County Sheriff's Office also seek dismissal because their employees or agents were not involved in the arrest and prosecution of Plaintiff. Plaintiff has presented no evidence suggesting that Bradley County employees were involved in his arrest, detention, and prosecution. These two defendants are not responsible for the 10th JDTF. *See* Davis Aff., ¶¶ 4-6; Samples Aff. ¶¶ 4-5. Therefore, Plaintiff's claims against these two Defendants must also be **DISMISSED** because there is no evidence that they were involved in the actions alleged in Plaintiff's complaint. *See e.g. Kyle v. England*, No. 3:09cv103, 2010 WL 1050193, *1 (E.D. Tenn. Mar. 22, 2010); *Leach v. Shelby Co. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

### IV. Conclusion

For the reasons outlined *supra*, including Eleventh Amendment immunity and the doctrine of *Heck v. Humphrey*, Plaintiff's claims against Defendants Bradley County, the Bradley County Sheriff's Office, the State of Tennessee, the 10th JDTF, Bobby Queen, in his official capacity, and Ken Wilson, in his official capacity, must be **DISMISSED** in their entirety with prejudice. Plaintiff's claims against Bobby Queen, in his individual capacity, Ken Wilson, in his individual capacity, and Fred Sullivan, in his official and individual capacities will be **DISMISSED** without prejudice.

A separate judgment will enter.

                            */s/ R. Allan Edgar*
                            R. ALLAN EDGAR
                     UNITED STATES DISTRICT JUDGE